UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BORDELON MARINE, INC.** | * | |
| | * | **CIVIL ACTION NO.: 15-0815** |
| **VERSUS** | * | |
| | * | **JUDGE MARY ANN VIAL LEMMON** |
| **ENERGY XXI GOM, LLC** | * | **SECTION "S"** |
| | * | |
| | * | **MAG. JUDGE SALLY SHUSHAN** |
| | * | **DIVISION (1)** |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
ON BEHALF OF BORDELON MARINE, INC.**

**MAY IT PLEASE THE COURT:**

Bordelon Marine, Inc. ("Bordelon") respectfully moves this Court for an order entering a partial summary judgment as follows: (1) dismissal of the counterclaims of Energy XXI GOM, L.L.C. ("Energy XXI") to the extent is seeks consequential damages, in the form of "Lost Reserves," lost profits, loss of use and loss of future production of oil and gas; and (2) limiting the claims of Energy XXI for any property damages it may prove at trial to the replacement value of Platform 27 1A at the time of the loss, less depreciation due to age.

This Motion is made pursuant to Rule 56(a)-(c) of the Federal Rules of Civil Procedure. Bordelon submits this Motion for Partial Summary Judgment dismissal of the consequential damages claims and limitation of the property loss claims without making any admission of liability or proportionate fault.

1

**Introduction.**

This matter arises out of an incident that occurred in the early morning hours of January 23, 2015, when the M/V CONNOR BORDELON, while encountering rain squalls, was proceeding en route to Fourchon, Louisiana, and transiting through an area commonly referred to as the "Rabbit Field," when it unexpectedly allided with an inadequately marked and insufficiently lighted marine structure, which was later determined to be a platform designated as South Timbalier 27 1A owned and operated by Energy XXI.[1]

On March 13, 2015, Bordelon filed a Declaratory Judgment Action which alleges, in pertinent part, that at the time of the allision, the marine structure designated by Energy XXI as Platform South Timbalier 27 1A, was not in compliance with all federal regulations and permits which applied to the platform because it was inadequately identified, improperly marked, and improperly lit; Bordelon's Declaratory Judgment Action further alleges that Energy XXI's failure to comply with these federal rules and permit requirements applicable to the marine structure was the proximate cause of the allision on January 23, 2015.[2]

On April 15, 2015, Energy XXI filed an Answer to Bordelon's Complaint and asserted a Counterclaim against Bordelon alleging damages caused by the allision in an unspecified amount.[3]

---

[1] Bordelon's Statement of Uncontested Material Facts filed herewith and Affidavit of Marva Jo Wyatt in Support hereof, at Statement of Uncontested Fact No. 1.
[2] *See* Civil Action No. 2:15-cv-00815-MVL-SS, at Document "1." *See also* Statement of Uncontested Material Facts Nos. 2 and 4 and Affidavit of Marva Jo Wyatt, with Exhibits, in support thereof.
[3] *Id.* at Document "4" ("ENERGY XXI'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM"). See Statement of Uncontested Material Facts filed contemporaneously herewith, and supporting Affidavit, at Uncontested Fact No. 4.

On January 27, 2016 this Court, Hon. Sally Shushan, ordered Energy XXI to produce an itemized statement of the damages Energy XXI claims herein and to identify all witnesses with personal knowledge of said damages.[4] Judge Shushan further ordered Energy XXI to produce all documents upon which it relies in asserting said damages.[5] Lastly, Judge Shushan ordered Energy XXI to supplement its Rule 26 disclosures so as to provide an "explanation of the relationship among Energy XXI, Energy XXI Services, LLC and Energy XXI (Bermuda) Ltd. and why the underwriters made payment to Energy XXI (Bermuda) Ltd. for damages to the platform rather than Energy XXI."[6]

Bordelon contends neither the documents nor the explanation of the "relationship" among the various corporate entities is sufficient. Bordelon has therefore filed a Motion for Evidentiary Sanctions, set for hearing before Hon. Sally Shushan, on March 9, 2016.[7]

In response to the Court's January 27 Order, on February 10, 2016, Energy XXI also served "Second Amended Disclosures" wherein it asserts damages for "Lost Reserves" in the amount of

---

[4] Fact No. 4, Record at Document 29, page 2. Specifically, the Order cited and quoted Red. R. Civ. P. 26(a)(1)(A)(iii) and required Energy XXI to produce "a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents . . . on which each computation is based."

[5] Fact No. 4, Record at Document 29, pages 2-4. ("**Within fourteen (14) days of the entry of this order,** Energy XXI shall produce all remaining documents in its possession, custody or control responsive to Bordelon's request for production of documents and as required by Rule 26 (a).")(emphasis in original text).

[6] Record at Document 29, pp. 4-5 ("**Within seven (7) days of the entry of this order,** Energy XXI shall provide Bordelon with a brief Explanation of the relationship among Energy XXI, Energy XXI Services, LLC and Energy XXI "Bermuda), Ltd.")(emphasis in original text).

[7] This Motion for Sanctions seeks to exclude from evidence all invoices, work orders, billing statements, receipts and cancelled checks (and other evidence of payments) issued to or paid by any corporate entities *other than* Energy XXI. This is the party seeking a judgment against Bordelon for $36,114,657.39 based in large part upon invoices, billing statements, work orders, receipts and other evidence of expenses incurred and paid by corporate entities *other than* Energy XXI, including: Energy XXI Gulf Coast, Inc., Energy XXI Services, LLC, EPL, Oil & Gas, Inc., Affidavit of Marva Jo Wyatt attached hereto as Exhibit A at Paragraph 8 and Exhibit "1" attached thereto (Energy XXI's Second Amended Disclosures).

$23,438,000.[8] No further specificity is provided as to the nature of the "Lost Reserves" claim -- despite the Court's January 27 Order having required "a detailed description of each item of damages Energy XXI currently seeks to recover . . . and . . . the individual(s) with personal knowledge sufficient to identify each as a witness and . . .serve a subpoena on each individual."[9]

No specific individuals are identified as witnesses to establish the $23.4 million "Lost Reserves" claim, and documents numbered EXXI 0009731 - EXXI 0010918 were produced in a lump sum fashion along with the Second Amended Disclosures, with no stated (or readily identifiable) connection to the specific "Lost Reserves" claim.[10]

Contemporaneous with the filing of this Motion for Summary Judgment, Bordelon has filed a Motion for Evidentiary Sanctions seeking an order precluding witnesses not identified by Energy XXI is compliance with the Court's January 27 Order, and which seeks to preclude Energy XXI from adducing documentary evidence relating to these various damages claims -- including evidence supporting its claim for "Lost Reserves" --as a sanction for Energy XXI's failure to comply with the January 27, 2016 discovery order. Bordelon's Motion for Evidentiary Sanctions

---

[8] Affidavit of Marva Jo Wyatt attached hereto as Exhibit A at Paragraph 8 and Exhibit "1" attached thereto (Energy XXI's Second Amended Disclosures). The $23,438,000 is a component of the total $36,114,657.39 which Energy XXI seeks to recover herein.

[9] Fact No. 4. *See also,* Record at Document 29, p. 2.

[10] Affidavit of Marva Jo Wyatt filed contemporaneously herewith at Paragraphs 7-9. Most of these documents were invoices, billing statements, work orders, receipts and other evidence of expenses incurred and paid by corporate entities other than Energy XXI, including (but not limited to) Energy XXI Services, LLC -- which was specifically included in the January 27 Order as *one* of the entities for whom Energy XXI was to provide an adequate explanation of the corporate relationship to Energy XXI. The only apparent support for the $23,438,000 "Lost Reserves" claim are EXXI 0010888-EXXI 0010918, marked "Attorneys Eyes Only" which Bordelon will file under seal if Energy XXI objects to Bordelon's Proposed Uncontested Fact No. 7. These documents are nothing more than projections of future production from purported reserves of oil and gas; the "Lost Reserves" figure is based on oil at $94.97 per barrel and gas at $4.33 per mcf. *See* Bordelon's Proposed Uncontested Fact Nos. 7 and 8. Furthermore, the projections are nothing more than projected gross profits, without subtraction for operating costs or capital expenditures. *See Id.*

4

is noticed for hearing before Hon. Sally Shushan (who issued the Order compelling production of the information and the documents) on March 9, 2016.

The present Motion for Summary Judgment is brought before this Honorable Court for hearing within the Court's scheduling order, requiring such motions to be brought for hearing by March 16, 2016. This Motion for Summary Judgment seeks dismissal of the "Lost Reserves" claim for $23,438,000.00 as a matter of law, and a judgment limiting any recovery which Energy XXI may ultimately recover due to the loss of Platform 27 1A, as a matter of law and based upon the uncontested facts.[11]

## Law and Argument.

1. **The Summary Judgment Standard.**

Under the Federal Rules of Civil Procedure, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material facts and that the moving party is entitled to judgment as a matter of law."[13] The moving party bears the initial burden of informing the Court of all of the evidence demonstrating the absence of a genuine issue of material fact.[14] Once the moving party

---

[11] Bordelon's Motion for Summary Judgment is brought with the Motion for Evidentiary Sanctions presently pending, due to the deadline for the filing of pretrial motions to be heard by March 16, 2016.
[12] Rule 56 (a), Federal Rules of Civil Procedure.
[13] Rule 56 (c), Federal Rules of Civil Procedure.
[14] *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5

has discharged this initial burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact. [15]

To avoid summary judgment "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"[16] Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[17] The Supreme Court has re-iterated, "and has several times repeated" that no longer "are judges . . . required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof …"[18]

In fact, the Supreme Court has made it clear that "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[19]

In addition to the legal bases for dismissal of the consequential damages and "Lost Reserves" claims as set forth in detail hereinafter, if the Motion for Evidentiary Sanctions is granted, so as to preclude Energy XXI from adducing any evidence whatsoever in support of its purported "Lost Reserves" claim, this Motion for Summary Judgment <u>must be granted</u> so as to dismiss this claim under the plain language of Rule 56(a) of the Federal Rules of Civil Procedure, because Bordelon will have discharged the initial burden of demonstrating there is no genuine issue of material fact for trial and

---

[15] *Celotex,* 477 U.S. at 322.
[16] *Matsushita Electric Industrial Company, Ltd. v. Zenith Rdio Corp,* 475 U.S. 249, 267 (1986).
[17] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)
[18] *Anderson,* 477 U.S. at 251.
[19] *Id.* (emphasis supplied by Court).

Energy XXI will have no evidence with which to rebut the showing. As the Supreme Court stated in *Anderson v. Liberty Lobby*: "summary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'"[20]

### 2. General Maritime Law Governs Energy XXI's Claims Against Bordelon.

The General Maritime Law governs the claim of Energy XXI against Bordelon because Energy XXI's claim involves an alleged tort committed by the owner and operator of a vessel in navigation on the high seas.[21]

### 3. General Maritime Law Precludes Energy XXI's "Lost Reserves" Claims.

The accepted rule under General Maritime Law, in the case of a total loss or constructive total loss (CTL) of a vessel, has been well settled: The owner of the lost vessel is *not* compensated for loss of use of the vessel, but rather is made whole by receiving the value of the vessel at the time of the loss and the interest thereon compensates the owner for the time value of the money.[22]

The General Maritime Law awards prejudgment interest from the date of the loss, not as a penalty, but instead as compensation for the loss of use of the money represented by the maritime property.[23] The *exception which permits pre-judgment interest* to be awarded under the General Maritime Law is in fact a corollary to *the reciprocal limitation* under the General Maritime Law on recoverability of loss of use and lost profits --which limitation is embodied in the "CTL rule" as it has come to be known.[24]

---

[20] *Anderson, supra* note 16.
[21] *Hough v. Western Transport Co. (The Plymouth),* 70 U.S. (3 Wall.) 20, 18 L. Ed 125 (1865).
[22] See, e.g., *King Fisher Marine v. N.P. Sunbonnet,* 724 F.2d 1181, 1187 (5th Cir. 1984), citing The UMBRIA, 166 U.S. 404 (1897).
[23] *Id.*
[24] *Gaines Towing and Transportation, Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5ht Cir. 1999).

Here we are dealing with the loss of a platform, not a vessel; however, the CTL rule applies equally to marine structures.[25]

The Fifth Circuit in *Gaines Towing and Transportation, Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633 (5th Cir. 1999) explained the CTL rule as follows:

> When a vessel is damaged in a collision or other marine casualty, the amount of recovery depends on whether it is deemed a total (or constructive total) loss or whether its partial damage justifies repair . . . A vessel is considered a constructive total loss when the damage is repairable but the cost of repairs exceeds the fair market value of the vessel immediately before the casualty. … In such a case repair is not economically practicable, and the market value of the vessel is the ceiling of recovery. <u>Damages for loss of use may not be awarded when the vessel is a constructive total loss</u>. … When a damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to precasualty condition.

*Gaines Towing and Transportation, Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir. 1999)(citations omitted) (emphasis added). *See also Black Stallion Enterprises v. Bay and Ocean Marine, LLC,* 862 F. Supp. 2d 534, 548 (E.D. La. 2012) ("[D]amages for loss of use may not be awarded when the vessel is a constructive total loss.")(citing *Gaines Towing* 191 F.3d 633).

This well accepted CTL rule has been applied to marine structures, with equal force as it applies to vessels, and in the context of an allision with a marine structure as in our case here. *See Pillsbury Company v. Midland Enterprises, Inc. (M/V ROBERT N. STOUT)*, 715 F. Supp. 738 (E.D. La. 1989).[26]

---

[25] *The Pillsbury Company v. Midland Enterprises, Inc. (M/V ROBERT N. STOUT), 715 F. Supp. 738 (E.D. La. 1989).*
[26] Platform South Timbalier 27 1A was in fact insured under a modified American Institute Hull (1977) Clauses Policy of insurance, which is a policy traditionally used to insure vessels. *See* Schoenbaum, Admiralty and Maritime Law (3d Ed.) Section 17-3 "Hull Insurance" ("The basic Hull Policy covers the vessel . . . [t]he American Institute Hull Clauses form is in general use for hull insurance.") The "Energy Package Policies" which have been produced by EXXI GOM, LLC, and the intervenors, are comprised of the standard American Institute Hull Clauses, with some

8

In *Pillsbury* the Court ruled:

Under general maritime law, 'where <u>property is destroyed</u> by wrongful act, the owner is entitled to its money equivalent, and thereby to be put in as good a position pecuniarily as if his property had not been destroyed.' When the costs of repairs to damaged property exceed the pre-casualty value of the property, the property is considered to be a 'constructive total loss'; when a property is damaged beyond physical repair, it is considered an 'actual total loss." <u>In either case, the measure of damages is generally the market value of the property just before the loss (less the value of any salved equipment or materials) and does not include loss of use or other consequential damages.</u>"[27]

*Pillsbury* was authored by Judge Carr, and involved an allision of loose barges with a dolphin and cell structure on the Mississippi River maintained and leased by Pillsbury.

The rationale of *Gaines Towing* and *Pillsbury* applies to Energy XXI's claims for "Lost Reserves," and mandates that these claims for consequential losses be dismissed as a matter of law.[28]

*Gaines Towing* is particularly compelling authority because the Fifth Circuit reversed the District Court's award of "loss of income" and remanded for detailed findings as to whether the

---

modifications, and contain familiar "vessel-insuring" clauses such as "Sue and Labor" and "Wreck Removal." *See Reliance Ins. Co. v. Yacht Escapade,* 280 F.2d 482 (5thCir. 1960)(noted admiralty jurist Hon. John R. Brown discussing "Sue and Labor" clause of Hull Policy); *Continental Oil Co. v. Bonanza Corp*., 706 F.2d 1365 (5th Cir. 1983)(discussing "Wreck Removal" clause). Claims have been made against the intervening underwriters under their "wreck removal" coverage and these underwriters, in turn, seek to recover these expenses as an alleged subrogee of Energy XXI. Record at Doc. 16. A copy of the front cover of each of the "Energy Package Policies" and the incorporation of the American Institute Hull Clauses on the accompanying Cover Notes is attached as Exhibit "4 " to the Affidavit of Marva Jo Wyatt filed contemporaneously herewith.

[27] *Pillsbury company v. Midland Enterprises, Inc.*, 715 F. Supp. 738, 764 (E.D. La. 1989)(footnotes omitted)(emphasis added).

[28] *See also*, "Loss of use is not allowable." *A&S Transportation v. TUG FAJARDO*, 688 F.2d. 1, 2 (1st Cir. 1982) (citations omitted).

vessel was a CTL, instructing that no damages "for loss of use" could be awarded in the case of a CTL:

> If the vessel was a constructive total loss, the court should have awarded damages in an amount equal to the pre-collision market value of the vessel, as determined by the court, <u>and should not have awarded any damages for loss of use of the vessel.</u> On the other hand, if the damaged vessel was not a total loss, the court should have awarded the owner the reasonable cost of repairs necessary to restore it to its precasualty condition and actual profits lost during the detention necessary to make repairs.

*Gaines Towing*, 191 F.3d at 635. *See also*, *In re M/V International Hunter*, Civil Action No. 12-358 (E.D. La. June 26, 2013) ("When a vessel is rendered a total loss . ... damages for loss of use may not be awarded")(*citing Gaines Towing*, 191 F. 3d at 633.)

A similar result was reached in *In Re: P&E Boat Rentals*, 872 F. 2nd 642 (5th Cir. 1989), the notorious case where boats were ordered to operate despite fog; the injured captain was deemed not at fault at the trial, and was awarded "future lost earnings," which defendants argued on appeal was "a disguised award for loss profits which are not recoverable where a vessel is a total loss." *P&E Boat Rentals*, 872 F.2d at 648.

The Fifth Circuit agreed with the defendants, and vacated that award. *Id* at 649. If the Court in *P&E Boat Rentals* held fast to the Maritime Law tort limitation on consequential damages and lost profits, in a case so egregious as *P&E Boat Rentals*, then Energy XXI's claim assuredly warrants similar treatment.

Judge Jones' decision in *Albany Insurance v. Bengal Marine,* 857 F.2d 250 (5th Cir. 1988), also mandates this result: there the Fifth Circuit reversed the District Court's award of rental "replacement costs" incurred by a barge owner, concluding "[t]he generally established rule is that

10

in a case of total loss the measure of damages does not include loss of use or other consequential damages.[29] Likewise, Energy XXI's "Lost Reserves" claim for $23,438,000.00 is not recoverable and must be dismissed.

### 4. General Maritime Law Mandates that the Replacement Costs for Platform 27 1A Establishes a "Ceiling of Recovery" for Energy XXI's Claims Against Bordelon.

It is likewise clear under the General Maritime law, that where there is a total loss, there is a "ceiling of recovery" established by the pre-casualty value of the lost property. In *Black Stallion v. Bay & Ocean Marine, L.L.C*, Judge Berrigan quoted *Gaines Towing* at length and followed the "ceiling of recovery" rule there articulated:

> The first legal issue concerns whether the MAINE was a "constructive total loss" because its repair costs exceeded the market value of the vessel immediately prior to the casualty. *Gaines Towing & Transportation, Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir.1999)… "In such a case repair is not economically practicable, and the market value of the vessel is the *ceiling of recovery*." *Gaines*, 191 F.3d at 635. "Damages for loss of use may not be awarded when the vessel is a constructive total loss." *Id.*

*Black Stallion Enters. v. Bay & Ocean Marine, L.L.C.,* 862 F.Supp.2d 534 (E.D. La. 2012)(emphasis added).[30]

---

[29]*Albany Insurance v. Bengal Marine,* 857 F.2d 250, 253 (5th Cir. 1988) *citing King Fisher Marine*, 724 F. 2nd at 1186-87. *See also T. Moore Services, LLC v. Rentrop Tugs, Inc.* 6:10-cv-1221 (W.D. La. 2012)("When a vessel is deemed a constructive total loss the owner is not permitted to recover lost future profits, loss of use or consequential damages.")
[30] Similarly, in *Moench v. M/V Salvation*, Civil Action No. 12-1536 (W.D. La. 2015), Judge Haik followed the "ceiling of recovery" rule articulated by the Fifth Circuit in *Gaines Towing*.

Bordelon makes no admission of any liability in any measure, but assuming *arguendo* some fault is assessed against Bordelon, Platform 27 1A is analogous to the "special use" marine structure in *Pillsbury*.

In *Pillsbury* Judge Carr determined the structure was "property for a special use or where there otherwise may be no true market [such that] replacement costs may be the most accurate basis for determining damages…" *Pillsbury,* 715 F. Supp. at 764.

Energy XXI has produced a "replacement cost estimate" which states the "replacement cost" of Platform 27 1A is $4,105,000.[31] This amount establishes a "ceiling of recovery" for any claims for physical damage to the platform, subject to depreciation as will be discussed below, and operates to limit any *potential* proportionate liability Bordelon may have, and furthermore *precludes any* consequential damages.[32]

In *Pillsbury* the Court limited "replacement costs" damages by a depreciation rule referred to as "the new – for – old rule" where "repair or replacement costs formed the basis of the damage award… [such that] 'only that which is necessary to restore the damaged property to the same condition *as existed immediately prior to the delict*'" is recoverable. *Pillsbury,* 715 F. Supp. at 764-65 (*quoting The City of New Orleans,* 662 F.2d at 1124).[33]

---

[31] Fact No. 11. Wyatt Affidavit at Paragraph 6, Exhibit "3."
[32] *Gaines Towing and Transportation, Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir. 1999). This "ceiling of recovery" rule as it applies to Energy XXI's claims also operates to preclude consequential damages.
[33] *See also Freeport Sulphur Co. v. S/S HERMOSA,* 526 F.2d 300, 305 (5th Cir. 1976).

The Court in *Pillsbury* determined that "an appropriate reduction from the full repair or replacement costs should be made" which in turn required that "the Court . . . determine what the expected useful life of the property was just prior to the casualty, what the expected useful life of the repaired or replaced property would be, and what amount should be reduced from an award in order to account for any prior depreciation or any anticipated betterment." *Id.* at 764.

Furthermore, any evidence adduced as to the "replacement costs" of Platform 27 1A must necessarily be scrutinized under the traditional limitations of both reasonable certainty and reasonable foreseeability.[34]

*Pillsbury* mandates that a depreciation factor of the marine structure must be subtracted from the proven replacement costs under the "new for old" depreciation analysis. In that case, Pillsbury had sought to avoid the "new-for-old" rule by claiming that its lease of the damaged marine structure was part of an overall lease of the loading facility, so that no depreciation should be subtracted from the actual bid for repairs.[35] Pillsbury argued it was contractually obligated under the lease to return the dolphin back to the lessor in its "pre-lease condition," *i.e.* the structure's condition at the time Pillsbury took possession, not the condition just prior to the allision.[36]

In other words, Pillsbury argued that the loss it suffered included its cost of fulfilling its contractual obligation to replace the damaged structure, without any reimbursement for the "betterment" in useful life, because Pillsbury could not have complied with its lease obligation

---

[34] *Marine Transport Lines, Inc. v. M/V Tako Invader,* 37 F.3d 1138, 1141-42 (5th Cir. 1994) *citing The Conqueror,* 166 U.S. 110, 125, 17 S.Ct. 510, 516, 41 L.Ed. 937 (1897).
[35] *Pillsbury*, 715 F. Supp. at 766.
[36] *Pillsbury*, 715 F. Supp. At 764-765.

without incurring the so-called "betterment" portion of its damages. The Court rejected Pillsbury's argument, concluding Pillsbury's "position …ignores the rule….that the defendant *is not to be required to pay for any betterments through repair or construction.*" *Id.* at 766-767.[37]

Judge Carr therefore held fast to his determination that "the Court must … determine what the expected useful life of the property was just prior to the casualty, what the expected useful life of the repaired or replaced property would be, and what amount should be reduced from an award, in order to account for any prior depreciation or any anticipated betterment," *Pillsbury*, 715 F. Supp. at 764. The Court thus rejected Pillsbury's argument that no deduction should be made for "betterment." *Id.*[38]

The purpose of the "new for old" limitation "is designed to avoid giving the injured party a windfall by furnishing something entirely new "for that which was old and depreciated and would in the normal course of things have to be replaced in any event."[39]  In this case, the "new for old" limitation mandates that the "replacement cost" claimed by Energy XXI of $4,105,000 is the uppermost limitation of any liability which Bordelon could possibly foresee with reasonable

---

[37]*See also Freeport Sulphur v. S/S HERMOSA,* 526 F.2d 300, 305 (5th Cir. 1976)(where property is enhanced, the owner's recovery is to be reduced by the enhanced value). *See also In re Crouse Corp.,* 956 F.Supp. 1377, 181-82 (W.D. Tenn. 1996)(applying the "new for old rule" so as to limit property owner's recovery).

[38]Notably, Judge Carr acknowledged that "it may be impracticable or even impossible to replace the cell with another whose useful life does not extend beyond the present cell's original expected useful life, and that Pillsbury . . . may receive no benefit from any extension of useful life beyond the term of the lease . . . [but] the law of this circuit affords no relief under such circumstances." Judge Carr rationalized the result on the basis of lack of foreseeability: "persons in defendants' position have no duty to foresee that damage to a fixed structure such as the cell would cause economic loss to an extent greater than and different from what would be recoverable by an owner of the cell." *Pillsbury*, 715 F. Supp. at 767 *citing Cargill, Inc.,* 782 F.2d 496, 498-99 (5th Cir.) *reh'g den.* 785 F.2d 1296, 1297-98 (5th Cir. 1986)(*per curiam*).

[39]*Tidewater Marine v. Sanco International,* 113 F. Supp. 837, 1008 (E.D. La. 2000)

14

certainty, subject to substantial depreciation, for this thirty year old structure, as may be demonstrated at trial.[40]

A partial summary judgment ruling which narrows the issues for trial at this juncture will operate to streamline further discovery and operate to limit the claims that may be considered during the settlement conference ordered by the Court to take place no later than April 29, 2016.

**Conclusion.**

Bordelon submits to the Court that partial summary judgment is warranted under the General Maritime Law precepts that unquestionably apply to this case and under the undisputed (indeed indisputable) facts of this case as follows:: (1)  Partial Summary Judgment dismissal of the claim for "Lost Reserves" and  (2) a ruling limiting any recovery Energy XXI and/or subrogated underwriters may obtain to the "ceiling of recovery" established by the replacement costs, less

---

[40]The issue at trial is likely to be whether Energy XXI is entitled to any "betterment" by recovery of any damages represented by the rebuilding of South Timbalier 27 because the evidence may demonstrate a rebuild that would probably not occur <u>due to depreciation</u> of the platform structure itself.

depreciation of Platform 27 1A.

                Respectfully submitted,

                **REICH, ALBUM & PLUNKETT, L.L.C.**

                */s/ Robert S. Reich*
                **ROBERT S. REICH, T.A. (#11163)**
                **LAWRENCE R. PLUNKETT, JR. (#19739)**
                **MARVA JO WYATT (#18052)**
                Two Lakeway, Suite 1000
                3850 N. Causeway Blvd.
                Metairie, Louisiana 70002
                Telephone: (504) 830-3999
                Facsimile: (504) 830-3950
                Emails: rreich@rapllclaw.com
                          lplunkett@rapllclaw.com
                          mwyatt@rapllclaw.com
                *Attorneys for Bordelon Marine, Inc.*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filings to all counsel of record who are authorized to receive electronic service on this 26th day of February, 2016.

                */s/ Robert S. Reich*
                **ROBERT S. REICH**